UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                              )
UNITED STATES OF AMERICA      )
                              )
                              )
           v.                 )   CRIMINAL NO. 03-10329-PBS
                              )
ANGELO BRANDAO,               )
                              )
                              )
           Defendant.         )
                              )
```

**MEMORANDUM AND ORDER**

January 9, 2006

Saris, U.S.D.J.

**I. INTRODUCTION**

Defendant Angelo Brandao moves to suppress statements made during a police interview on the early morning of May 15, 1999. Brandao alleges, for a variety of reasons, that his statements were involuntary and must be suppressed pursuant to the Fifth Amendment. After hearing and review of the briefs, the motion is **DENIED**.

**II. FINDINGS OF FACT**

Defendant was arrested and charged at 11:30 PM on the night of May 14, 1999 in connection with a shooting incident on Holmes St. in Brockton.[1] After being booked and advised of his Miranda rights, defendant asked to speak with Trooper John Duggan of the

---

[1] That stop is the subject of another motion to suppress and will not be addressed here.

Massachusetts State Police, an officer with whom he had spoken before in connection with the investigation of the recent killing of Dinho Fernandes.[2]  Duggan, who was at home and asleep at the time, was awakened and advised of defendant's desire to speak with him.  Duggan proceeded to the scene of the Holmes St. shooting and supervised the collection of evidence.  Duggan then traveled to the Brockton Police Station, where defendant was being held.

Upon arriving at the station, Duggan, accompanied by Det. Mark Reardon of the Brockton Police, again advised Brandao of his <u>Miranda</u> rights, and Brandao signed a waiver of rights form at 3:14 AM.  Both Reardon and Duggan were involved in the interrogation.  Brandao appeared alert and did not show signs of fatigue.  Duggan then began questioning Brandao about the Dinho Fernandes homicide.  Brandao first offered an alibi regarding his whereabouts during the Fernandes shooting.  Duggan responded by explaining that he had obtained new evidence about the shooting, including the car from which the shots were fired and eyewitnesses detailing the car's passengers.  Brandao became emotional at this point and began to weep.

Duggan then asked Brandao to recount his version of the events surrounding the Fernandes murder.  Brandao responded

---

[2] There are two waivers in the record, dated May 15 and May 18, but it is not clear why.

despondently but did not confess to the crime, twice saying, "there's only one thing left to do," and sliding his finger across his throat.  After approximately one hour, the interview ended.  At no time during the conversation did Brandao interrupt the interview or ask for an attorney.

Brandao, then age 20, had no prior arrest record and appeared to Duggan to be a novice.

### III. DISCUSSION

Defendant argues that he did not make his statements voluntarily and that they should therefore be suppressed pursuant to the Fifth Amendment.  For a statement to be constitutionally admissible, it must be voluntary and not compelled.  United States v. Jackson, 918 F.2d 236, 241 (1st Cir. 1990) ("An involuntary statement violates due process and its admission into evidence mandates vacation of the conviction even though other evidence in the case would have been sufficient to convict."); United States v. Lawrence, 889 F.2d 1187, 1189 (1st Cir. 1989) ("To use compelled statements against a defendant . . . would compel the defendant to testify against himself, contrary to the Constitution.").  There is no dispute in this case that defendant was properly advised of his Miranda rights, both orally and in a written statement that defendant signed.  "Where, as here, the coercion inherent in custodial interrogation is dissipated by proper administration of the warnings, . . . a defendant

challenging admission of statements made subsequent to the warnings must point to evidence tending to show that his statements nonetheless were 'coerced, compelled or involuntary.'" United States v. Duarte, 160 F.3d 80, 81 (1st Cir. 1998) (quoting Lawrence, 889 F.2d at 1189).

"The question as to compulsion is 'whether the will of the defendant had been overborne so that the statement was not his free and voluntary act, and that question [is] to be resolved in light of the totality of the circumstances.'" Bryant v. Vose, 785 F.2d 364, 367-68 (1st Cir. 1986) (quoting Procunier v. Atchley, 400 U.S. 446, 453 (1971)).  A court's inquiry should include an evaluation of the length of the interrogation, its location and continuity, and defendant's maturity, education, and mental health.  See Withrow v. Williams, 507 U.S. 680, 693 (1993).  The government bears the burden of proving voluntariness by a preponderance of the evidence.  Jackson, 918 F.2d at 241.

Defendant argues that the officers' questioning him in the wee hours of the morning and suggesting that there was very strong evidence against him were "tactics designed to wear him down, and to capitalize on his feelings of isolation, weariness, and fatigue."  (Def's Br. 1.)  However, there is no evidence that defendant exhibited any signs of fatigue during questioning.  Nor did he at any point evince a desire to end the interview or seek legal advice.  All evidence indicates that defendant wished to

speak with the officers.

Defendant cites in support of his claim a 1978 district court case from New York, Robinson v. Smith, 451 F. Supp. 1278 (W.D.N.Y. 1978).  However, in that case, the officers had not given the suspect warnings of his right to counsel and his right to remain silent, and the suspect had been held in custody with no sleep or food for an entire night.  Id. at 1282.  Furthermore, the suspect had been arrested without probable cause in a tavern after a night of drinking.  Id. at 1286.  In this case, defendant had been fully advised of his rights three times, and makes no allegations that he was confined under harsh conditions. Nor was the defendant beaten or prevented from sleeping as in the other case cited for support.  Cf. United States v. Henderson, 421 F. Supp. 674, 676-77 (S.D.N.Y. 1976); see also Lawrence, 889 F.2d at 1190 (describing cases where statements were deemed involuntary). Furthermore, the late hour of a confession is not per se evidence of involuntariness, particularly for a young person out on the town.  See Johnson v. Hall, 605 F.2d 577, 581 (1st Cir. 1979) (confession at 5:50 AM after night of custody deemed voluntary).

Although the police confronted defendant with further evidence of the Fernandes murder, there is no indication that defendant's statements were involuntary.  While it is undisputed that defendant began to cry, merely becoming emotional during interrogation does not render statements involuntary.  See United States v. Browne, 891 F.2d 389, 393 (1st Cir. 1989) (statement

5

deemed voluntary even though defendant was crying and shaking); Bryant, 785 F.2d at 368 (holding that an emotional response to questions is not evidence of improper police tactics). Furthermore, defendant never confessed to any role in the Fernandes killing; his responses to questions do not indicate a loss of control demonstrating that under the totality of the circumstances his will was overborne.

Defendant was alert and communicative, aware of his rights, and treated humanely at all stages of the interrogation. There is no argument that defendant lacked the capacity to understand the import of the statements he was making. The government has met its burden of demonstrating by a preponderance of the evidence that defendant's statements were voluntary in the totality of the circumstances.

### ORDER

After hearing and review of the briefs, defendant's motion is **DENIED** (Docket No. 718).

**S/PATTI B. SARIS**

United States District Judge