UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                  )
UNITED STATES OF AMERICA          )
                                  )
        v.                        )  CRIMINAL ACTION NO. 03-10329-PBS
                                  )
ANGELO BRANDAO,                   )
                                  )
        Defendant.                )
_____)


**MEMORANDUM AND ORDER**

May 12, 2010

Saris, U.S.D.J.

**I. INTRODUCTION**

Petitioner Angelo Brandao was convicted of racketeering and
firearms charges after a jury trial and sentenced to 333 months
imprisonment on December 13, 2006.  The First Circuit affirmed
the conviction.  United States v. Brandao, 539 F.3d 44 (1st Cir.
2008).  Brandao has filed a motion to vacate the sentence
pursuant to 28 U.S.C. § 2255, arguing that: (1) he received
ineffective assistance of counsel based on counsel's failure to
object to a portion of the jury charge; (2) the government's
failure to disclose exculpatory evidence violated his due process
rights; (3) his sentence was unreasonable; and (4) new
information suggests that the jurors were untruthful during voir
dire when questioned about their ability to fairly evaluate the
testimony of a police officer.

After review of the briefs and the record, the motion to vacate is **DENIED**.

## II. BACKGROUND

The facts of this case that are relevant to deciding the instant motion are briefly stated here; the full factual background of this case is set forth by the First Circuit in its review of the petitioner's conviction on appeal.  Brandao, 539 F.3d at 46-50.

## A. Jury Instruction

On February 9, 2006, a jury convicted Brandao on four counts of racketeering and firearms charges and acquitted him of four other counts.  In the course of the trial, the jury received erroneous instructions on Racketeering Act 20, which is one of the predicate acts with which Brandao was charged in relation to the racketeering charges.  The error, which resulted in the jury receiving instructions on substantive murder rather than conspiracy to commit murder, was the result of a drafting error in the indictment.  Id. at 56-57.  Despite the fact that the Court distributed draft instructions a week prior to the jury being charged and conducted two conferences on the instructions, petitioner did not object to the instruction and only first raised the issue through a post-trial motion.  This Court held that Brandao was not prejudiced by the error.  United States v.

2

Brandao, 448 F. Supp. 2d 311, 323 (D. Mass. 2006).  The First
Circuit agreed.  Brandao, 539 F.3d at 62.

**B. Exculpatory Evidence**

Brandao filed a Motion for New Trial on May 1, 2006,
alleging that he was prejudiced by the prosecution's failure to
disclose a new criminal conviction of its key witness.  This
Court found that the information about the witness's conviction
was immaterial and therefore denied the motion.  Brandao, 448 F.
Supp. 2d at 328-29.  The First Circuit affirmed this ruling,
finding that it was not an abuse of discretion for this Court to
rule that the prosecution's omission was immaterial.  Brandao,
539 F.3d at 64.

**C. Appeals and Post-Sentencing Motions**

On December 13, 2006, this Court sentenced the petitioner to
333 months of imprisonment.  He timely appealed and the First
Circuit denied his appeal on August 21, 2008.  Brandao moved for
rehearing, which was denied on October 27, 2008.

Petitioner filed the instant motion in November 2009.  In
support of his allegations that some jurors were untruthful
during voir dire, Brandao submitted an attachment under seal
[Sealed Document, Docket No. 1559] that consisted of an essay
written by one of the jurors.  The essay indicates that the juror
wrote it in August 2006 for a non-fiction writing class.

**III. DISCUSSION**

3

Under Section 2255, a defendant may seek post-conviction relief in four instances: if the sentence "(1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998)(citing Hill v. United States, 368 U.S. 424, 426-27 (1962)).  The petitioner must demonstrate an entitlement to Section 2255 relief, as well as the need for an evidentiary hearing, by a preponderance of the evidence.  Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992) (citation omitted).

Claims that a petitioner has previously had a full and fair opportunity to litigate generally may not be raised under Section 2255 absent countervailing equitable considerations.  Withrow v. Williams, 507 U.S. 680, 721 (1993).  Similarly, "[i]ssues disposed of on a prior appeal will not be reviewed again by way of a 2255 motion." Tracey v. United States, 739 F.2d 679, 682 (1st Cir. 1984).

Petitioner makes no claim that his sentence was imposed by a court that lacked jurisdiction or exceeded the statutory maximum. All of his arguments for post-conviction relief thus attempt to show that his sentence is "otherwise subject to collateral attack" or was imposed in violation of his constitutional rights.  Three of the four issues Brandao raises

4

in his motion to vacate are reiterations of arguments he made
during his original case and on direct appeal.  In essence, the
only new ground for relief alleged in the instant motion is that
certain members of the jury were untruthful during voir dire.

## A. Ineffective Assistance of Counsel

Petitioner argues that he received ineffective assistance of
counsel due to his trial attorney's failure to object to an
erroneous jury instruction on Racketeering Act 20.  To succeed on
an ineffective assistance of counsel claim, the petitioner must
show that (1) counsel's performance was deficient, and (2)
petitioner was prejudiced by counsel's deficient performance.
Strickland v. Washington, 466 U.S. 668, 687 (1984).

Brandao asserts that he was prejudiced by his attorney's
failure to object to both the jury instruction on the elements of
murder rather than conspiracy to commit murder and the special
verdict form that identified Racketeering Act 20 as "the murder
of Dinho Fernandes" rather than conspiracy to commit murder.  He
contends that his trial counsel's performance was deficient based
on the fact that his counsel had sufficient opportunity to object
to the instruction and special verdict form at any time during
the week between the Court's distribution of draft jury
instructions and the jury's receipt of the charge, including
during the two conferences on the instructions attended by
counsel.  Petitioner alleges that he was prejudiced by this error

5

because the prosecution did not present evidence of the element of "agreement" that was necessary to prove conspiracy to murder as actually charged in Racketeering Act 20 in the indictment.

Additionally, Brandao argues that jury confusion was exhibited by the fact that the jury acquitted him of Count 33 of the indictment, which charged him with the murder of Dinho Fernandes under the Violent Crimes in Aid of Racketeering (VICAR) statute, 18 U.S.C. § 1959, but found he committed Racketeering Act 20, which was erroneously captioned "murder of Dinho Fernandes" [Docket No. 1259].  In rejecting this argument when petitioner initially raised it in his post-trial motion, this Court explained that "[a] likely explanation for the jury's behavior is that there is an additional element of the VICAR count which the government failed to prove, namely that Defendant committed the murder of Fernandes . . . in furtherance of his membership in the enterprise . . . or for the purpose of maintaining his position in the enterprise."  Brandao, 448 F. Supp. 2d at 320.

Even if the petitioner could demonstrate that his counsel's failure to object constituted deficient performance, the First Circuit has already rejected his argument that he was prejudiced by this error.  Quoting this Court, the First Circuit found that an objection to the erroneous instruction and special verdict form would not have changed the outcome of Brandao's case:

> [G]iven the evidence at trial, the jury could not
> have found Brandao guilty of murder (the amended
> charge) if it had not also found he had colluded
> with others to carry out the murder.  "Because the
> government never suggested that Defendant pulled
> the trigger, an agreement was a necessary condition
> of the jury's finding Defendant guilty of the
> substantive murder via an aiding and abetting
> theory."

Brandao, 539 F.3d at 63 (quoting Brandao, 448 F. Supp. 2d at 323-

24).  As this Court previously stated, the erroneous jury

instruction did not prejudice the petitioner because "there is no

logical explanation for how the jury could have found Brandao

guilty of aiding and abetting substantive murder and not guilty

of conspiracy to murder."  Brandao, 448 F. Supp. 2d at 324.

The First Circuit and this Court have also previously

rejected petitioner's argument that the jury's acquittal on Count

33, the VICAR murder of Dinho Fernandes, demonstrates prejudice.

Both courts discounted this argument because the VICAR count

required a showing that the murder was committed by Brandao in

order to maintain or improve his position in the enterprise.  The

First Circuit explained, "the jury could have found Brandao

guilty of murdering Fernandes while not also finding that, as

required for a VICAR conviction, he committed the murder to

maintain or improve his position in [the enterprise]."  Brandao,

539 F.3d at 63 n.13 (citing Brandao, 448 F. Supp. 2d at 320).

Since Brandao offers no argument to support his claim of

prejudice that has not already been rejected by the First

Circuit, he cannot meet his burden of proving both that his counsel's performance was deficient and that he was prejudiced by that deficient performance.  See Tracey, 739 F.2d at 682.

**B. Government's Failure to Disclose Witness's Prior Conviction**

Petitioner's second argument for relief is that his Due Process rights were violated by the government's failure to disclose a new criminal conviction of its key witness. Petitioner acknowledges that this issue has already been addressed by this Court and the First Circuit.  However, he argues that the issue should be reconsidered because this Court made no specific findings on whether the prosecution acted in bad faith and because the U.S. Attorney's Office has come under scrutiny for subsequent instances of failing to disclose evidence to criminal defendants.

When Brandao first raised the prosecution's failure to disclose its witness's conviction in a Motion for New Trial, this Court rejected the argument, finding that "[a]lthough Defendant again asserts bad faith on the part of the prosecutor, there is no evidence to support it." Brandao, 448 F. Supp. 2d at 328. Furthermore, this Court held that the undisclosed impeachment evidence was not material because there was ample evidence already available with which Brandao could impeach the witness, and the witness's testimony was corroborated by other significant evidence.  Id.  The First Circuit affirmed the denial of the

Motion for New Trial on these same bases.  Brandao, 539 F.3d at
64.

Petitioner offers no new evidence that the prosecution acted
in bad faith and thus provides no basis for reconsideration of
this issue.  The petitioner's contention that the Boston U.S.
Attorney's Office has faced recent criticism for withholding
exculpatory evidence in other cases provides no support for his
allegation that the prosecution acted in bad faith in this case.

## C. Reasonableness of Sentence

Next, the petitioner reiterates another set of arguments
that have previously been rejected by the First Circuit and this
Court.  Specifically, he contends that his sentence was
unreasonable because it created a disparity between his sentence
and that of his more culpable co-defendants.  He also submits
that his sentence was unreasonable because he was eighteen at the
time of the offenses, had no criminal history, and had only been
involved in the enterprise for two months.  Brandao laid out
these arguments extensively in his sentencing briefs.

Notwithstanding these contentions, this Court determined
that a sentence of 333 months was appropriate, and the First
Circuit agreed on appeal. Id. at 65.

## D. New Evidence About Potential Juror Untruthfulness

The sole claim presented by petitioner that has not been
previously ruled upon by this Court and the First Circuit

involves new evidence about juror responses to voir dire.
Petitioner states that new information was brought to his
attention that shows that all jurors but one were untruthful when
they were asked during voir dire whether "they would believe the
testimony of a police officer simply because he or she is a
police officer." (Def.'s Mot. for New Trial or to Reduce
Sentence at 11.) According to Brandao, an evidentiary hearing is
necessary on this matter because "he was clearly prejudiced by
the untruthful answers given by jurors in response to the
questionnaire" given the fact that the prosecution's case rested
heavily on testimony from police. (Id.) He also suggests that
the essay "raises serious questions as to whether the jury was
exposed to extraneous prejudicial information or whether any
outside influence was improperly brought to bear upon any juror."
(Resp. to Gov't Opp'n to Def.'s Mot. to Vacate at 5.)

The new information touted by Brandao is an essay written by
one of the jurors for a creative non-fiction writing class[1] that
purportedly describes various aspects of the trial, including
some parts of the jury deliberation. [Sealed Document, Docket
No. 1559].

### 1. Contents of the Juror's Essay

---

[1]The Epilogue of the essay suggests that Brandao probably
obtained the essay through his cousin who came to know its author
after the trial. The author apparently goes to church in the
community where the crimes at issue in this trial occurred.
[Sealed Document, Docket No. 1559 at 19.]

The creative writing piece submitted by Brandao describes interactions among the jurors during deliberations regarding police credibility:

> "Ana, why would the police lie?" asked my fellow juror.  I looked at her in disbelief.
> "They are human, for one," I replied.  "They lie to close a case, to cover their backs, they even lie to make sure that people who are guilty are convicted."  In my head I said they also lie to put black people in jail.  But I wasn't going to go there.  For one, this case was about gangs, murder and shootings.  At least that is what the charges said.

[Sealed Document, Docket No. 1559 at 14.]  Shortly after this passage, the author continued:

> I looked around and saw the looks on the faces of the other jurors.  Each face had the same message.  They could not believe that I believed that the police could lie.  I could not believe that they believed that the police never lied.  For the first time the deliberations came to a complete standstill.  For what seemed like an interminable time I looked at them and they looked at me over this impasse.

[Id.]

In a later passage, the author indicated:

> I thought back to the testimony of the Detective.
> "Detective, when you interrogate a suspect do you take notes or tape your interviews?" asked the defense lawyer.
> "No, I rely on my memory to write my reports," replied the Detective.
> "You interrogated Angelo Brandao, nearly six years ago.  Have you re-read the reports prior to coming to testify today?" the lawyer continued.
> "No, I have not."

> "What more proof do you need?" I thought.
> "Even if he is not lying his memory is not perfect.
> Nobody's is."
> I had to admit to myself that it was about
> race.  Not police lying.

[Id. at 14-15.]  She further stated:

> In the end we did not have to come to an agreement
> about police lying.  The real issue turned out to
> be police incompetence and sloppy work in gathering
> evidence and keeping it in custody. . . .  We found
> one man innocent because the police simply did not
> provide sufficient evidence for the prosecutor to
> present to us."

[Id. at 17.]  The man that the jury found innocent was Brandao's

co-defendant.

## 2. Permissibility of Post-verdict Juror Inquiry

Federal Rule of Evidence 606(b) prohibits the admission of

juror testimony and evidence of juror statements for the purpose

of impeaching a jury verdict.  Fed. R. Evid. 606(b); see also

United States v. Connolly, 341 F.3d 16, 34 (1st Cir. 2003)

(quoting Tanner v. United States, 483 U.S. 107, 117 (1987)).  In

part, the rule states:

> Upon an inquiry into the validity of a verdict
> or indictment, a juror may not testify as to
> any matter or statement occurring during the
> course of the jury's deliberations or to the
> effect of anything upon that or any other
> juror's mind or emotions as influencing the
> juror to assent to or dissent from the verdict
> or indictment or concerning the juror's mental
> processes in connection therewith.

Fed. R. Evid. 606(b).  The rule manifests several policy

considerations including "finality, maintaining the integrity of

the jury system, encouraging frank and honest deliberations, and the protection of jurors from subsequent harassment by a losing party." Connolly, 341 F.3d at 34.

Notwithstanding the prohibitions of Rule 606(b), jurors may testify about three matters that are exceptions to the rule: (1) extraneous prejudicial information that was improperly brought to the jury's attention, (2) any outside influence improperly brought to bear on any juror, or (3) a mistake in entering the verdict on the verdict form.  Fed. R. Evid. 606(b).  However, the First Circuit has previously warned that "courts generally 'should be hesitant to haul jurors in after they have reached a verdict to probe for potential instances of bias, misconduct, or extraneous influences.'"   Neron v. Tierney, 841 F.2d 1197, 1205 (1st Cir. 1988) (citing United States v. Moon, 718 F.2d 1210, 1234 (2d Cir. 1983)).  Such an inquiry should only be conducted when "there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant." Connolly, 341 F.3d at 34 (citing Moon, 718 F.2d at 1234).  Most motions that urge post-verdict inquiry fall short of meeting this high threshold.  See, e.g., Id. (holding that a post-verdict inquiry based on possible use of juror's notes made outside of actual trial time during deliberation was improper because the notes were not an "extraneous" or "extrinsic" influence); United

13

States v. Villar, 586 F.3d 76, 78-79 (1st Cir. 2009) (holding
that Rule 606(b), but not the Constitution, precluded inquiry
into racial or ethnic prejudice based on an e-mail message from
one of the jurors disclosing another juror's statement: "I guess
we're profiling but they cause all the trouble.").

### 3. Evidence of Nonspeculative Impropriety

Nothing in the juror's essay or anything else in evidence
even suggests that some extraneous or outside influence affected
the jurors in Brandao's case.  The fact that one juror's creative
writing piece claims that during deliberations all the other
jurors in the case disagreed with her about whether the police
lied provides no basis for believing there may have been some
sort of outside force or information affecting the outcome of the
case or that the jurors lied during voir dire.

The information contained in the creative writing piece
hardly constitutes the "clear, strong, substantial and
incontrovertible evidence that a specific, nonspeculative
impropriety has occurred" that is required by the First Circuit
before a court may inquire into misconduct, bias, or prejudice on
the part of a juror.  Connolly, 341 F.3d at 34 (citing Moon, 718
F.2d at 1234).

### 4. Prejudice to Petitioner's Case

Petitioner's argument is further undermined by the fact
that, in order to warrant an inquiry into the validity of a jury

14

verdict, First Circuit precedent requires not only substantial and incontrovertible evidence of a specific impropriety, but also that the impropriety "could have prejudiced the trial of [the] defendant." Id. (citing Moon, 718 F.2d at 1234). Brandao offers no support for his claims that he was prejudiced by the jurors' alleged untruthfulness. According to the juror essay submitted by petitioner, the matter of police credibility was not relevant to the jury's verdict: "In the end we did not have to come to an agreement about police lying." [Sealed Document, Docket 1559 at 17.] This assertion in the essay suggests that the jury had sufficient evidence on which they could agree (i.e. evidence not including police testimony) that led them to the verdict they reached in this case. Thus, even if petitioner could sufficiently establish that the jurors did have a bias favoring police testimony, which he has failed to do here, the outcome of his case would be no different than if decided by jurors without that bias.

## IV. ORDER

Petitioner's motion under 28 U.S.C. § 2255 to vacate his conviction and order a new trial, or in the alternative to reduce his sentence of 333 months [Docket No. 1535] is **DENIED**.


                                        S/PATTI B. SARIS
                                        United States District Judge

15